UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

_____

JAMES R. FREED,

                Plaintiff,

vs.                              Case No. 23-cv-12365
                                      Honorable Shalina D. Kumar
                                      Mag. Judge Elizabeth A. Stafford

INTERNATIONAL CITY/COUNTY
MANAGEMENT ASSOCIATION,
JESSICA COWLES, VICTOR CARDENAS,
CORRI SPIEGEL, DIANE STODDARD,
JEFF TOWERY, ~~JIM MALLOY,~~
~~KENNETH WILLIAMS,~~ MICHAEL KAIGLER,
MOLLY MEHNER, ~~NATHANIEL PAGAN,~~
PAMELA ANTIL, ~~PETER TROEDSSON,~~
RAY GONZALES, ROXANNE MURPHY,
SCOTT COLBY, JR., TROY BROWN,
VALMARIE TURNER, ~~WILLIAM FRASER,~~
ROBERT KRISTOF, CHRIS MACPHERSON

                Defendants.
_____

**PLAINTIFF'S REPLY TO DEFENDANTS'
RESPONSE TO PLAINTIFF'S MOTION TO REMAND**

## I.   THERE IS A COLORABLE BASIS FOR A CLAIM AGAINST VICTOR CARDENAS

In short, to void a remand, Defendants must show that it is "clear that there can be no recovery under the law of the state" against the non-diverse defendant -- Cardenas. *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). The parties agree that if there is "arguably" a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, remand is appropriate. See *Coyne ex rel. Ohio v. American Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999)(case Defendants claim is the most controlling authority*); Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 1*76 F.3d 904, 907 (6th Cir. 1999). However, where the parties apparently disagree is on the standard for determining whether there is a colorable basis for a claim and whether that standard has been met.[1]

For purposes of the motion, Defendants did not challenge whether Plaintiff has a viable claim for defamation based upon the public censure documents, or whether a claim can be maintained against a person who is involved in the drafting of a defamatory publication. Instead, in their response brief, Defendants argue the facts and claim that there is evidence that Mr. Cardenas was not involved in the drafting or content of the defamatory publications. For example, Defendants claim that Mr. Cardenas testified "not that I recall, I don't believe I did" when asked

---

[1] Defendants also question Plaintiff's motive for not dismissing "the only non-diverse defendant (Cardenas) in the case" and call it "suspicious" (ECF No. 6, PageID.514 and 504). However, the motive of plaintiff in keeping a non-diverse defendant in the case is not relevant to the fraudulent joinder inquiry. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)

about his involvement in the drafting of the defamatory publications and that equivocal response is sufficient to show there is no colorable basis for a claim.

However, as the Sixth Circuit has made clear, in making the determination of whether there is a colorable claim, the court "must resolve 'all disputed questions of fact and ambiguities in the controlling state law in favor of the removing party'". *Coyne ex re. Ohio v. American Tobacco Co.,* 183 F.3d at 493 (citing *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994); *Gentek Building Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007).  In their brief, Defendants have done the opposite – they request that the Court review the facts in the light most favorable to them, not Plaintiff.

A review of the facts in the light most favorable to Plaintiff shows there is colorable claims against Mr. Cardenas.  At a time numerous Michigan managers opined how unfair the public censure was, including Mr. Cardenas' own boss, after Plaintiff's June 16, 2022, email explaining the censure was based upon a non-existent vaccine mandate (ECF No. 4-12), Mr. Cardenas took a leading role to try to justify the actions against Plaintiff (ECF No. 4-8, Cardenas dep, pp. 76-81).

He then took it one step farther and interjected himself into the language of the press release and the newsletter/website publication.  On June 27, 2022, Mr. Cardenas reached out to Ms. Cowles and ICMA determined that they wanted his feedback before they finalized the language of the publications (see ECF No. 4-13).  Mr. Cardenas then held a zoom call with Ms. Cowles and Ms. Perego to

discuss the language of the publications (see ECF No. 4-6, PageID.412, Cowles dep., pp. 95-96 ["we explained what was in the press release" and revised it "based on Victor Cardenas' feedback"]). Mr. Cardenas admitted the reason for interjecting himself in the drafting of the publications was because of "what happened per the conversations I had with those [Michigan] members" i.e., they told him they thought the public censure was unfair, and that "I was trying to communicate with Martha and Jessica regarding what the wording and what the press releases would say maybe I thought" (ECF No. 4-8, PageID.443,Cardenas dep., p. 88).  Ms. Cowles admitted that on June 29, 2022, "after hearing Victor's feedback", she revised the documents (ECF No 4-14; ECF No. 4-7, PageID.Cowles dep. Vol. 2, pp. 95-96).

After the revisions, the public censure documents included the verifiably false factual statement that Plaintiff made a "preemptive declaration to city employees that he would never implement a specific law or policy when it is the manager's duty to do so". Notably, the press release intentionally did not disclose that it was about an alleged vaccine mandate, and its inclusion of the phrase "duty to do so" clearly implies that Plaintiff was refusing to follow the law and it expressly accused Mr. Freed of violating his commitment to "honesty and integrity" (ECF No. 4-10).  Ultimately, Plaintiff was accused of acting unlawfully because he had a "duty" to impose a vaccine mandate on his employees, and he refused to follow the non-existent law.  In fact, that fallacy is what Plaintiff pointed

out to the other Michigan Managers in his listserv email that triggered Mr. Cardenas to try to defend the public censure.

Neither Ms. Cowles or Mr. Cardenas are willing to disclose what Mr. Cardenas' suggestions were, and what part of the public censure documents were changed at his suggestions (ECF No. 4-8, PageID.444, Cardenas dep., p. 93["I don't recall" what feedback provided or "if they sent me [a draft] or not"] to review and revise). In contravention of preservation demands and court orders, Mr. Cardenas has also destroyed all of his own emails and text messages so we cannot determine the exact nature of his involvement. Thus, the undisputed evidence shows that Mr. Cardenas was involved in determining the language of the press release. He knew that there was no vaccine mandate in Michigan, yet the press release, after his revisions were incorporated, still falsely stated otherwise. A reasonable interpretation of these facts is that Mr. Cardenas wanted to make sure that the public censure publication looked as strong as possible so that Mr. Freed would look bad to the public. That is why the press release does not mention the vaccine mandate, and why it includes the phrase "duty to do so" without specifying what law Plaintiff allegedly broke.

Thus, the undisputed facts in the light most favorable to Plaintiff show there is clearly an "arguable" basis for a claim against Mr. Cardenas for defamation[2],

---

[2] Although Defendants suggest that the publications contain non-actionable opinions, there is no absolute privilege protecting opinion from application of defamation laws and a statement of opinion that implies false and defamatory facts is actionable. See *Smith v. Anonymous Joint*

invasion of privacy/false light, as well as conspiracy.  Here the conspiracy was to defame Plaintiff, so Mr. Cardenas' involvement in the process also clearly states a claim against him on that basis as well.  Unlike the other "no" voters, he interjected himself in the plan to "cancel" and defame Plaintiff.

Moreover, there are sufficient facts to support that Mr. Cardenas' actions meet the "actual malice" standard.  Mr. Cardenas, unlike the other drafters of the publications who were not from Michigan, knew there was no vaccine mandate in Michigan.  Like the other defendants he could have easily confirmed the status and content of the Federal OSHA-ETS.  In fact, Plaintiff and his counsel informed the Board of details of the OSHA-ETS in writing multiple times (ECF No. 6-12, 6-14, 4-12).  As the United States Supreme Court held in *Harte-Hanks v. Connaughton*, 491 U.S. 657 (1989), where a person knows the truth, or could have easily ascertained the truth, a jury has "ample evidence from which it could conclude that [defendant] acted in purposeful avoidance of the truth", and thus acted with actual malice.  *Id* at 692; see also *Smith v. Anonymous Joint Enterprises*, 487 Mich. 102, 127 (2000)("Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category").

Thus, there are several colorable claims against Mr. Cardenas.

## II.    DEFENDANTS CANNOT REBUT THE TIMELINESS ISSUE

In their brief, Defendants offer only circular arguments as to why their

---

*Enterprises*, 487 Mich. 102, 127 (2010); *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18-19 (1990).  Thus, regardless of whether the statements are fact or opinion they are actionable.

removal was not untimely.  They argue that they could not remove the case when it was initially filed because even though they knew that Mr. Cardenas voted "no", there could have been some "other basis to hold Cardenas liable", i.e., "something he did outside of his vote against the public censure", thus defendants did not have "solid and unambiguous information showing the case is removable" (ECF No. 6, PageID.522-523).  Then twelve months into the case, when they learn that Plaintiff is dismissing some of the defendants who voted "no" but are keeping Mr. Cardenas "for something he did outside of his vote", they suddenly now conclude "the facts showed there was no other basis to hold Cardenas liable", and thus for the first time have "solid and unambiguous information" to support the removal (Id).  In short, Plaintiff claims that the August 31, 2023 dismissal of the other defendants who voted "no", somehow became "solid and unambiguous information" that there was no basis for a claim against Cardenas, even though Cardenas is not mentioned in the order.  This argument does not make logical sense.

In fact, on August  23, 2023, Plaintiff explained in detail the reasons why Mr. Cardenas, unlike the others who voted "no" was not being dismissed (ECF No. 4-15), thus the basis for removal in September 2023, was even weaker than it was in September 2022, and the dismissal order is clearly not "solid and unambiguous information" to support the position that there is no claim against Cardenas.  It is the opposite.  Either Defendants had the right to remove when the lawsuit was filed based upon the "no" vote, or if the possibility of a claim based upon something

other than a "no" vote prevented the removal within the first 30 days of the case, then it prevents the removal at the present time, especially after discovery disclosed even more evidence of a colorable claim against Mr. Cardenas.

Finally, in both cases, all of the information to support the decision has always been within the control of defendants and available to them – not just the "no" vote as Defendants concede in their brief, but also Mr. Cardenas' involvement in the drafting of the public censure documents. In fact, all of the documents and testimony upon which Plaintiff is relying to support such a claim were from ICMA or the other Defendants. *Holston v. Carolina Freight Carriers* Corp., 936 F.2d 573 (6th Cir. 1991). Thus, the removal was clearly untimely.

## **CONCLUSION**

Removal was improper, and the case should be remanded to the St. Clair County Circuit Court.

FLETCHER FEALKO
SHOUDY & FRANCIS, P.C.
Attorneys for Plaintiff
By:  /s/ Todd J. Shoudy
1411 Third Street, Suite F
Port Huron, Michigan  48060
(810) 987-8444
Michigan Bar #41895

DATED:  November 17, 2023        tshoudy@fletcherfealko.com

The undersigned certifies that a copy of the foregoing instrument was served upon the attorney for Defendants on November 17, 2023 by e-filing.
/s/ Theresa A. Messing
Fletcher Fealko Shoudy & Francis, P.C.
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tmessing@fletcherfealko.com

7